ESTHER BODNER, Appellant, *v.* MOLLIE FEIT and Others, Respondents.

First Department, April 3, 1936.

*Aaron F. Goldstein* of counsel [*Henry Edelman* and *Harry Pastor* with him on the brief], for the appellant.

*Edward J. Fontana* of counsel [*Nicholas H. Pinto*, attorney], for the respondents.

TOWNLEY, J.    Plaintiff brought this action to set aside certain transfers made by her deceased husband.    It is claimed that these transfers were in fraud of her rights under the Decedent Estate Law.    Plaintiff was married on March 26, 1933.    Her husband died on July 11, 1934, leaving four children by a prior marriage. Prior to his death and on April 3, 1934, the husband had made transfers of a substantial part of his property for the benefit of his children.    These transfers are alleged to have been made without consideration and the complaint then states:

" *Sixteenth.*    That all the said transfers by the said Nathan Bodner to each of the defendants was in fraud and deceit of the plaintiff's rights with the deliberate design to defeat the plaintiff herein of her rights in lieu of dower as provided for by the Decedent Estate Law; and was without the knowledge and consent of the plaintiff herein.

" *Seventeenth.*    Upon information and belief that at all times up to the time of his death, the said Nathan Bodner maintained and exercised control over the said property, bank accounts and shares

of stock herein referred to and received the rents, interests, profits and proceeds therefrom."

The complaint further sets out as a second cause of action that these transfers were accomplished as a result of a conspiracy entered into between the defendants and plaintiff's deceased husband which had as its purpose the transfer of all of the husband's property to his children so as to deprive the plaintiff of her right of inheritance under the Decedent Estate Law. The complaint alleges:

" *Twentieth.* That on or about the 3rd day of April, 1934, the defendants conspired together and formed the deliberate design and purpose to dispose of the property of the late Nathan Bodner in such a manner that during his life, the said Nathan Bodner would derive the benefits therefrom and yet upon his death not die seized of the said property, and that shortly before his death, the said Nathan Bodner conveyed all of his property both real and personal, to his children without any valuable consideration therefor, without the knowledge or consent of the plaintiff with intent to defeat the plaintiff herein of her rights in lieu of dower as provided for under Section 18 of the Decedent Estate Law, Laws of 1929, Chapter 229."

This complaint raises the question whether an owner of property, in order to defeat the inchoate rights of his wife under the Decedent Estate Law, may, in his lifetime, make such a transfer as will enable him to keep control of the property and yet prevent the rights of the wife from maturing at his death.

The exact question presented is without precedent in this jurisdiction. In *Rubin* v. *Myrub Realty Co., Inc.* (244 App. Div. 541) this court sustained the right of a wife to set aside a transfer similar to that involved here and the Appellate Division of the Second Department in *LeStrange* v. *LeStrange* (242 App. Div. 74) reached the same conclusion. In each of these cases, however, there was involved either an ante-nuptial agreement or a representation. We do not consider such agreement essential to a recovery.

Sections 18, 82 and 83 of the Decedent Estate Law in place of dower and curtesy have given certain rights in the property of which a decedent dies seized. These rights are substantial and are intended to enlarge rather than restrict the rights of a wife in her husband's property. (See *Rubin* v. *Myrub Realty Co., Inc., supra*, 544.) They may not be destroyed by transfers under which the grantor retains the control and benefit of his property during life but which upon death pass the property to others than those entitled to receive it under the statute. Under the statute, husbands and wives have the utmost freedom of control over their respective properties and may transfer them as they will in normal

course during their lives. They may not, however, strip themselves of their property for the sole purpose of depriving those that the statute intended to protect of their right to inherit.

Decisions in other jurisdictions where dower and curtesy have been abolished sustain this view. (*Thayer* v. *Thayer*, 14 Vt. 107, 120; *Grover* v. *Clover*, 69 Col. 72; 169 P. 578; *Smith* v. *Smith*, 22 Col. 480; 46 P. 128; *Payne* v. *Tatem*, 236 Ky. 306; 33 S. W. [2d] 2.) These cases are very fully and ably reviewed in the opinion of Mr. Justice O'MALLEY in *Rubin* v. *Myrub Realty Co., Inc.* (*supra*). It would serve no useful purpose to repeat what was there said other than quote the following extract from the opinion in *Thayer* v. *Thayer* (*supra*), a case not involving an ante-nuptial agreement: " The conclusion, then, to which we come, is, that the oratrix had, in the life time of her husband, such rights as should be recognized, protected and enforced; that the attempt to elude these rights, in the manner disclosed in this case, was *mala fide*, and a fraud upon the law and upon the marital rights of the oratrix, and that, as a consequence, the husband, so far as respects the widow, must be regarded, at the time of his death, as being the owner and having the seizin of the property in question. This result, we think, is in accordance with well settled principles, and such as sound policy and justice dictate."

The order should be reversed, with twenty dollars costs and disbursements, and the motion denied, with leave to defendants to answer within ten days after service of the order to be entered hereon upon payment of said costs.

MARTIN, P. J., DORE and COHN, JJ., concur; UNTERMYER, J., dissents and votes for affirmance.

UNTERMYER, J. (dissenting). Giving to the complaint the most favorable interpretation, it alleges that Nathan Bodner, the deceased, at various times created trusts and made transfers of certain of his property for the benefit of his children. In the case of each trust, it is alleged, Nathan Bodner was trustee and there is also a general allegation, entirely consistent therewith, that until his death he " exercised control over the said property." The exact terms of the trusts are not set forth in the complaint, but from the allegation that Nathan Bodner " received the rents, interests, profits and proceeds " during his lifetime, it may be assumed that the arrangements contemplated that Nathan Bodner should receive the income of the property during his life and at his death that the principal should be paid or delivered to the particular child or children for whose benefit the trust had been established. There is no allegation, nor is it contended, that the

transfers were colorable merely or that the property remained the property of the transferor and is now a part of his estate. The complaint does not allege that the trusts were revocable in his lifetime by Nathan Bodner, even if that were material here. On the contrary, the complaint refers to the transfers as creating existing interests in the transferees which are claimed to be in derogation of the rights of the plaintiff and which the plaintiff demands be set aside. If the action were upon the theory that the transfers were colorable, vesting no interest in the transferee, and that consequently the property remained an asset of the deceased, then it could not be maintained by the widow in her individual right but should have been instituted by the executors for the benefit of all parties interested in the estate. (*McQuaide* v. *Perot*, 223 N. Y. 75.) I shall, therefore, assume in the discussion of the question now presented for decision that the transfers complained of were such that they could not have been assailed by the executors previous to the enactment, in 1929, of section 18 of the Decedent Estate Law.

The conditions which are described in the complaint are not at all unusual, except for the allegation in the second cause of action that these transfers were made as the result of a conspiracy between the father and his children to defeat the right of the plaintiff to share in her husband's estate. Indeed, it does not appear to be disputed that Nathan Bodner could have created these trusts " in normal course " for the purpose of benefiting his children at his death, even though he could not fail to know that this would result in depleting his estate. But it is contended that different consequences follow because the trusts are alleged to have been created for the purpose of depriving the plaintiff of her statutory interest in his estate. In other words, the validity of these transfers depends, it is said, upon the *motive* which induced the disposition to be made. The question of the effect of motive upon such a transfer was considered by HOLMES, C. J., in *Leonard* v. *Leonard* (181 Mass. 458, 460; 63 N. E. 1068). Under the statute of Massachusetts (See *Brownell* v. *Briggs*, 173 Mass. 529; 54 N. E. 251), a widow was entitled to certain rights in the property of her deceased husband of which she could not be deprived by will. Yet it was held that a transfer whereby the deceased retained a life interest was valid as against the wife, even though made for the purpose of depriving her of her statutory rights in the estate. Speaking of motive the court said (p. 461): " As a husband can convey property notwithstanding his foresight of the effect of his conveyance upon his wife, the question arises to what extent his motive can make a difference. Ordinarily, except in cases under statutes or in deter-

mining the extent of a privilege to infringe upon the admitted right of another, motive does not affect the validity of a transaction in this Commonwealth, and it does so even less in England. Cases are not in point where there is a right irrespective of the motive, such as that of creditors against conveyances manifestly defeating their power to collect their debts. It is obvious that the decision in *Brownell* v. *Briggs* must be read with an eye to the precise facts on which it arose. That case certainly was not intended to decide that any and every otherwise valid transaction was bad into which a jury should find that there entered the motive of dislike for the grantor's wife, or even every one in which dislike for his wife predominated over love for his neighbor or desire for gain. *Wood* v. *Bodwell*, 12 Pick. 268."

The determination of this question is of great importance. It is not an exaggeration to say that upon the decision will depend whether real and personal property shall be freely alienable in this State. If the principle is once established that section 18 of the Decedent Estate Law vests in each spouse some legal interest in the property of the other during life, then the acquisition of property from a married man or woman is no longer safe. The danger, of course, is most obvious where the transfer is without consideration, as in such family arrangements as existed here, annuities, and in cases of charitable gifts, all of which will be subject to attack upon the theory that the animating motive was not the enrichment of the beneficiary but the destruction of the interest of the surviving spouse in the estate. But even transfers made for a consideration will not be secure, for it will be asserted (as it was unsuccessfully asserted in *Holmes* v. *Holmes*, 3 Paige, 363) that the consideration was inadequate and the sale a sham, merely intended to defeat the rights of the surviving spouse. One of the principal purposes of abolishing dower by the amendment of section 190 of the Real Property Law (Laws of 1929, chap. 229) was to avoid complications in the transfer of real estate. The decision here will not only restore certain of these complications but will extend the evil to personal property as well. And what will be the issue which will be decisive of the validity of the transfer? It will be the secret motive of the transferor.

I am able to find no warrant in the Decedent Estate Law for an action of this character. Section 18 appears to have been devised to avoid the dangers which would result from vesting in either spouse, until after death, any interest, inchoate or otherwise, in the property of the other. It confers upon the survivor a right of election " to take his or her share *of the estate as in intestacy* " where the will fails to give a substantial equivalent.

It places no restriction on the right of disposition over property during the lifetime of either party to the marriage. The only limitation is upon the power of testamentary disposition. Until death there is no suggestion of any interest given to each spouse in the property of the other. The interest is expressly limited to " the estate " of the deceased. If there is no estate, no matter what the cause, no interest comes into existence. When the Legislature intended otherwise it found no difficulty in saying so (Tax Law, § 249-r). Here, on the contrary, the power of either party to dispose of property, except by will, remains as complete as it ever was before. The statute does not make the wife a creditor of the husband or the husband a creditor of the wife, as to whom a fraudulent conveyance would be void. (Compare *Phelps* v. *Phelps*, 143 N. Y. 197.) The Legislature in effect has said: You may do as you please with your property while you live. You may spend it. You may waste it. You may give it away, absolutely or conditionally. You may do this out of motives of benevolence or for the malign purpose of disappointing the expectations of those who would share in your estate. But whatever you have not spent or given in your lifetime, whatever remains at your death and becomes an asset of your estate, will no longer be subject to unlimited disposition by your will and will be distributed in the manner specified to husband or wife, as the case may be.

If the plaintiff had no interest in her husband's property in his lifetime, but only an expectancy, then this action must fail, nor can it be saved by applying to his conduct the epithet of " fraud." That term is meaningless when applied to a disposition by the absolute owner of property which is intended to prevent it from benefiting a party who has acquired no interest therein. " No one is heir to the living," it was said in *Doctor* v. *Hughes* (225 N. Y. 305), and, therefore, Nathan Bodner in his lifetime could not have been prevented, by injunction or otherwise, from making a transfer of this property by way of absolute gift to whomsoever he chose. If he could do this he could qualify the gift by the creation of a trust whereby he would receive the income during life. And this he could do, whether his motive was to enrich the transferee or to impoverish his estate.

It is said, also, that these rights of the wife were intended to be in substitution of the right of dower as it existed formerly. This I think is true. (Dec. Est. Law, § 18, subd. 7; § 82.) But this does not mean that when the Legislature abolished dower it conferred upon the wife an estate both in the husband's real and personal property of the same quality. In fact, as I have already said, it is universally recognized that the Legislature intended nothing of the kind.

The question presented here does not appear ever to have been directly decided in this State. The two decisions relied on by the plaintiff (*LeStrange* v. *LeStrange*, 242 App. Div. 74, and *Rubin* v. *Myrub Realty Co., Inc.*, 244 id. 541) are distinguishable in that each involved a state of facts where the deceased had made representations to the plaintiff concerning the extent of the property which she would inherit at his death as an inducement to the marriage. More nearly in point, I think, is *Robb* v. *Washington & Jefferson College* (185 N. Y. 485) where the effect of section 17 of the Decedent Estate Law (then chapter 360 of the Laws of 1860) was under consideration by the court. That section prohibits the devise or bequest to any charitable association or corporation of more than one-half of the estate of any person having a husband, wife, child or parent. In lieu of a bequest, however, the grantor of the trust had executed a declaration of trust in favor of the defendant corporation in which he constituted himself trustee and whereby it was provided that after the payment annually to Washington and Jefferson College of the sum of $1,800, the balance of income upon the principal, aggregating about $130,000, should be paid to the grantor himself. Upon his death the principal was disposed of to certain legatees named in his will and to Washington and Jefferson College. It was held that this instrument was not testamentary in character, and would not be so if it had contained a full power of revocation as had previously been held in *Van Cott* v. *Prentice* (104 N. Y. 45), for the reason that immediately upon its creation the beneficiary acquired an interest in the trust. It was further held that the creation of the trust, though serving in most respects the purpose of a will, did not constitute a fraud on the provisions of the act of 1860 limiting charitable devises and bequests. The court quoted with approval the opinion of VANN, J., in *Amherst College* v. *Ritch* (151 N. Y. 282) to the effect that the statute " does not prevent him [the deceased grantor] from giving all that he has to charity during his lifetime. It is aimed simply at the giving of an undue proportion to charity *by will*, when certain near relations have, in the opinion of the Legislature, a better claim." The court also quoted with approval the following from the dissenting opinion of Chief Judge ANDREWS in *Amherst College* v. *Ritch* (*supra*): " What the statute plainly did intend was to prohibit one form of donation to corporations, described in the act, which should exceed one-half of the donor's estate, namely, a donation by will. The donor was not permitted by will to give to the charities mentioned beyond the prescribed amount. The statute regulated and restricted *testamentary donations, and no others.*" And the court by CULLEN, Ch. J., then added: " Therefore, it was entirely within

the power and the right of Mr. Wallace to give to the college by deed of trust such part of his estate as he saw fit, and even though this was done in view of the statutory restrictions on donations by will, his act contravened neither the letter nor the spirit of the statute." In *Herrmann* v. *Jorgenson* (263 N. Y. 348) also it was decided that neither husband nor wife had such an interest in the property of the other under section 18 of the Decedent Estate Law as to disqualify them as interested witnesses in litigation which might benefit the surviving spouse. Said the court: " The husband has no immediate interest in his wife's property. She may, as heretofore, convey it without his consent or signature to the deed. The only interest given him by the change of section 18 and section 83 of the Decedent Estate Law is that if she make a will he may take the interest which he would have on intestacy."

The same rule prevails in other jurisdictions.

In *Stewart* v. *Stewart* (5 Conn. 317, 321) the husband had executed a deed of real estate and placed it in the hands of a third person to be delivered to his children at his death. By the law of Connecticut " every married woman living with her husband at his death, has right of dower in one-third of the real estate, of which her husband died possessed, in his own right." The widow contended that the conveyance was in the nature of a testamentary disposition, and that the instrument was made with an intention to defeat her right of dower. The court, however, said: " This depends entirely on the right, which she had to the estate conveyed, anterior to the death of her husband. If she had no right, which the law recognizes, then the delivery of the deed could be no fraud on her right, that is, no fraud on a non-entity. By the English law, the right to dower originates on the marriage; but by our law, it takes its origin at the husband's death. Our ancestors did not think it expedient to restrain that free transfer of real estate, which the interest of the community requires; and for this reason, the law has given to the wife no lien upon, or right, legal or equitable, to the husband's estate, during his life. Her condition, in this respect, is like that of her husband's children, or other heirs; and the only right of either is to such estate as he has not disposed of. The condition of creditors and purchasers is altogether different."

In *Lines* v. *Lines* (142 Penn. St. 149; 21 A. 809) the plaintiff brought suit to declare certain deeds of trust executed by her deceased husband to be void as in fraud of her rights as his widow, upon the ground that they were executed in order that the plaintiff might be deprived of her interest in his estate under a statute very similar to ours. Said the court (p. 165): " It is the settled law of this State that a man may do what he pleases with his personal estate

during his life. He may even beggar himself and his family, if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his wife attach to his personal estate. She then becomes entitled to her distributive share, and of this she cannot be deprived by will or any testamentary paper." And the court then quoted from *Pringle* v. *Pringle* (59 Pa. 281) where it was said that " a man's wife or children * * * have no legal right to any part of his goods, and * * * no fraud can be predicated of any act of the husband or parent to deprive them of the succession."

In *Hall* v. *Hall* (109 Va. 117; 63 S. E. 420) there was under consideration a very similar state of facts. By the law of the State of Virginia a wife could not be deprived of her interest in the real or personal property of her husband by last will and testament. (*Lightfoot's Executors* v. *Colgin*, 5 Munf. 42.) It was nevertheless held, as it had previously been held in *Lightfoot's Executors* v. *Colgin* (*supra*), that the husband could deprive the wife of her interest in his estate by a conveyance of property to trustees to collect the income for his benefit during life and to distribute the corpus to designated persons on his death. The court said: " It is true the circumstances surrounding the transaction leave no room for doubt that it was Hall's purpose to limit the rights of his wife in his estate to the provision made for her by his will and deed. Nevertheless, if in so doing he has not transcended his legal rights, she cannot be heard to complain; nor can the courts impugn his conduct, no matter what may have been the actuating motive.

" The fact that the precise question involved in this case has been twice decided by this court, renders unnecessary a discussion of the power of the husband to disappoint his widow by divesting himself of title to his personal estate in his lifetime. (Of course, the doctrine is not to be confounded with the principles applicable to dispositions of property made in contemplation of marriage.) "

In *Jones* v. *Somerville* (78 Miss. 269; 28 So. 940) a statute of the State of Mississippi (Code of 1892, § 4496) allowed the wife, in lieu of any provision made by will, to take her distributive share of her husband's property as upon intestacy. The husband shortly before his death had executed a trust by which he gave two-thirds of his fortune to a daughter by a former marriage, reserving to himself the income until death. It was held that such a conveyance, though made to prevent the plaintiff from inheriting under the statute, was valid because " under the law now there is no marital interest, actual or inchoate, until the death of the spouse, in the ownership of the property, whether real or personal."

In *Samson* v. *Samson* (67 Iowa, 253; 25 N. W. 233) there was also a statute which entitled the widow to a distributive share of her husband's estate notwithstanding the existence of a will. (Code of 1882, § 2436.)   Yet it was held that in his lifetime the husband might divest himself of his property to the detriment of his wife's interest in his estate.   The court said: " It is finally contended that said gift is void as against public policy.   By the transaction the deceased was divested of much the greater part of his estate; and the argument of counsel is that, as the husband cannot by will divest his widow of the distributive share which the law gives her in his estate, he should not be permitted to accomplish that result by distributing it during his life-time to his heirs.   The ready answer to this claim is that it is in the personal property of which the husband dies seized that the law gives the widow a distributive share.   Code, § 2436.   But during his life-time she has no inchoate right in such property, and he may make such disposition of it during his life-time as he sees fit.   If he sells it, or makes any other disposition of it by which he is divested of the ownership, the wife has no claim upon it after his death.   The law has placed no restriction or limitation on the power of the husband to make such disposition of his personal property during his life-time as he may elect."

Again, in *Sturgis* v. *Citizens' Nat. Bank* (152 Md. 654; 137 A. 378) the same question was presented.   It had previously been decided that in the State of Maryland a husband could not by will deprive his widow of that portion of his personal estate to which she was entitled by law.   (*Griffith* v. *Griffith's Executors,* 4 Harr. & McH. 101; *Coomes* v. *Clements,* 4 Harr. & J. 480.)   Nevertheless it was held that the husband could make a gift of personal property for the purpose of depriving the wife of her interest in his estate. Said the court: " No interest of the wife can interfere with such a gift.   Moreover, the husband is free to make the gift for the purpose of depriving the wife of any share in that property at his death; no right or interest of hers can interfere with the gift made for that purpose, or with that motive, any more than a gift with any other purpose or motive."

I maintain, therefore, that if the trust or gift would bind the grantor, it will bind his heirs. (*Williams* v. *Williams,* 40 Fed. 521.) It must be remembered that whatever rights are accorded to the wife must be accorded also to the husband, for the statute (Dec. Est. Law, § 18) does not discriminate between them.   Whatever limitations we impose on the husband's power of disposition over his property we, therefore, impose likewise on the wife, notwithstanding the express provisions of the Married Women's Property Acts (Dom.

Rel. Law, §§ 50, 51), that she shall control her separate property " as if she were unmarried."

Most of the cases relied on by the appellant are distinguishable. They mostly exemplify the solicitude with which the courts have protected the wife's right of dower, which from early times was recognized as " a favorite of the law." Even so, the decision principally relied on (*Thayer* v. *Thayer*, 14 Vt. 107), was conceded, even by the majority of the judges who concurred in the opinion (p. 117), to be in direct opposition to an important authority in this State (*Holmes* v. *Holmes*, 3 Paige, 363).

The order should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with leave to the defendants to answer within ten days after service of order upon payment of said costs.