In the Matter of the Estate of CLARA S. BURT, Deceased.

Surrogate's Court, Westchester County, July 8, 1936.

*Fletcher & Brown,* for Henry R. Burt, executor and trustee.

*McLaughlin & Stickles,* for James S. Warren, objectant.

*Silas S. Clark,* special guardian.

SLATER, S. Clara S. Burt died October 5, 1932, leaving a will dated February 10, 1930, duly admitted to probate. The decedent left a husband and a daughter and son by a former marriage. Her estate was very substantial. The will directs the payment of debts and funeral expenses. In the accounting proceeding herein, the schedules show payments made by the executors for the expenses of the last illness of the decedent in the amount of about $2,500. Objections to the account with reference to the payment of such expenses have been filed by the son and by the special guardian of the infant children of the son.

It is the contention of the objectants that such disbursements were improperly charged against the estate and that, in the absence of a special agreement, the husband is primarily liable for the expenses of the last illness of his wife under the rule of the common law.

The following cases are cited to support such contention: *Matter of Totten* ([1910] 137 App. Div. 273); *Matter of Stadtmuller* ([1905] 110 id. 76); *Gittings* v. *Russel* ([1906] 114 id. 405); *Thrall Hospital* v. *Caren* ([1910] 140 id. 171); *Conlon* v. *Union Dime Savings Bank* ([1921] 195 id. 509); *Feit* v. *Holzapfel* ([1918] 104 Misc. 73); *Matter of Huedner* ([1930] 138 id. 101).

The expenses of the last sickness of a married woman living with her husband have been classed as necessaries. (1 Schouler Dom. Rel. § 109.)

*Such an expense is closely allied with charges for funeral expenses.* It has been held in former times that, where the wife leaves a *separate estate*, such estate is liable to the charge for funeral expenses. (*Matter of Stadtmuller, supra,* at p. 77, and cases cited; *Freeman* v. *Coit,* [1882] 27 Hun, 447.)

It was held in *Watkins* v. *Brown* (89 App. Div. 193, 2d Dept. Dec. 1903), that a surviving husband, while under a legal obligation to bury his wife, may reimburse himself from the separate estate of the wife, if she has left an estate. (This is on the theory of an equitable lien on her estate, I assume.) (Citing *Patterson* v. *Patterson,* 59 N. Y. 574; *McCue* v. *Garvey,* [1878] 14 Hun, 562; *Freeman* v. *Coit, supra.*) The court said: " If the husband fails to perform this duty he is liable to an action to recover the reasonable value of its performance by any person who, on account of his absence or neglect, has properly incurred the expense of the necessary burial. This rule applies to the present case. It does not appear that the deceased wife *left any property* other than the policy of life insurance payable to her husband. * * * Under the facts as established by the proof they are entitled to recover the reasonable value of their services."

It would appear that the decision holds to the view that, if the decedent wife has a *separate estate,* then the charge must be paid from it. (*Matter of Moran,* [1911] 75 Misc. 90; *Matter of Vitelli,* [1932] 146 id. 17; *Matter of Horn,* [1934] 151 id. 261.)

Such a principle the court is applying upon the facts of the instant case.

In *Romig* v. *Sheldon* ([1910] 124 N. Y. Supp. 26; affd., 142 App. Div. 925) the wife died *intestate* and her personal property vested absolutely in her husband according to the rule of common law. The court held that " it is only where a married woman leaves descendants that this rule has been changed by our statutes." (Dec. Est. Law, § 100; *Robins* v. *McClure,* [1885] 100 N. Y. 328; *Matter of Thomas,* [1901] 33 Misc. 729.)

The decisions in cases of *intestacy* are predicated on the rule of common law as carried into section 103 of the Decedent Estate Law, which recognizes the common-law rule vesting the entire personal property of a wife's estate in her husband, *jure mariti,* if she dies *intestate* without descendants. (1 Jessup-Redfield, §§ 524a, 613, 1198; *Conlon* v. *Union Dime Savings Bank,* 195 App. Div. 509; *Feit* v. *Holzapfel,* [1918] 104 Misc. 73.)

The common-law rule of England was based upon the proposition that a married woman had few, if any, rights and her property passed to her husband. It naturally followed that, if he took her property, he would become responsible for her necessaries and maintenance. The conception of the rule presupposes unity. The wife had no separate estate. The husband was entitled to her land in fee; to her life estate; to her chattels real; to her choses in action, and for this he assumed the duty to pay her debts; to maintain her; to become liable for her necessaries; to become liable for her torts. The duties of the wife while cohabiting with her husband form the consideration of his liability.

In the last seventy-five years, however, this has all been changed. The rights of married women have become enlarged so that, at the time of the Married Women's Property Act (Laws of 1848, chap. 200) and since, the real and personal property of a married woman continues to be her sole and separate property and is not subject to her husband's control. (Dom. Rel. Law, § 50.) (For historical note, see McKinney's Consolidated Laws of New York, vol. 14, p. 5, regarding Domestic Relations Law.) The statute law has compelled man to surrender these barbaric rights. It has been held that the Married Women's Property Acts have not changed the common-law duty of liability for necessaries. (*Graham* v. *Schleimer*, [1899] 28 Misc. 535.)

*DeBrauwere* v. *DeBrauwere* ([1911] 203 N. Y. 460, 464) is a leading case on the liability of a husband for necessaries of a wife. In this case the husband had *abandoned* the wife. The court said (at p. 464): " We prefer to place his liability on a different ground. The husband was unquestionably under a legal obligation to provide his wife and children with the necessaries of life suitable to their condition. This liability would have been enforcible by the wife in her own behalf and in behalf of her infant children were it not for her *disability at common law to sue her husband.* That disability having been removed, a wife who has applied her separate estate to the purpose of an obligation resting primarily upon her husband may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation. In other words, under the common law such a claim as that in suit was not enforcible, because a married woman was incapable of owning any separate estate and likewise incapable of maintaining an action at law against her husband. These obstacles have been removed by placing a married woman on the same footing with a woman who is unmarried in respect to her property rights, and by permitting her to enforce such rights in the courts against her husband no less than against strangers.

The plainest principles of justice require that a wife should have some adequate legal redress upon such a state of facts as that set forth in this complaint, and the beneficial character of our legislation removing the former disabilities of married women could not be evidenced more forcibly than it is in its application to the present case."

And, again, as to the measure of his liability, the court said: " The obligation of the husband to provide his wife and children with the necessaries of life suitable to their condition is to be measured with reference to his pecuniary ability, honestly exercised, or his pecuniary resources; that is to say, those things might properly be deemed necessaries in the family of a man of generous income or ample fortune which would not be required in the family of a man whose earnings were small and who had saved nothing. The husband is bound to provide for his wife and children ' whatever is necessary for their suitable clothing and maintenance, according to *his* and their situation and condition in life.' ( *Keller* v. *Phillips*, 39 N. Y. 351, 354.) The husband's pecuniary ability, therefore, may be an element to be considered upon the trial of the action if any question is raised as to the character of the expenditures for which the wife seeks reimbursement."

This rule was followed in *Matter of Nutrizio* ([1931] 145 Misc. 626, Foley, S.), which was an abandonment case, as was *Krotosky* v. *Krotosky* ([1915] 169 App. Div. 850, 856). Another deserted wife case is *Matter of Reich* ([1930] 138 Misc. 823); also *Laumeier* v. *Laumeier* ([1924] 237 N. Y. 357); also *Matter of Rogers* ([1934] 153 Misc. 793). In such cases the common-law rule has survived.

The Commission to Investigate Defects in the Law of Estates changed the whole theory of the descent and distribution of real and personal property. (Laws of 1909, chap. 240.) Section 103 of the Decedent Estate Law, which was the common law written into the statute law regarding the liability of a husband for the debts of his *intestate* wife, was repealed. The Commission's note was this: " This section is unjust, since the husband's common law right to all of his wife's unbequeathed personalty, in the absence of descendants, was taken away by the 1919 amendment to § 100. Therefore his liability should now be the same as that of any other person who actually receives assets of a decedent, either individually, or as administrator." (Legis. Doc. 1930, No. 69, p. 130.)

The Statute of Distribution (Laws of 1929, chap. 229), in effect September 1, 1930, created a new system of distribution as was indicated in the report of the Commission with regard to equality between men and women. The Commission said: " The rights of the husband and the wife should be made uniform and reciprocal

as to inheritance, succession, and right of election to take against the will." (Legis. Doc. 1930, No. 69, p. 88.)

The question is, have not the modern laws changing the status of women impliedly abrogated the common-law rule affecting the husband's liabilities in many cases?

My friend, Justice LAUER, of the Supreme Court of New York county, wrote an illuminating and modern opinion affecting the question of liability of husband or wife in *Apostle* v. *Pappas* ([Jan. 1935] 154 Misc. 497). This was a case where the funeral bill for the husband's funeral was asserted against the wife. The question for consideration was, is the separate estate of a surviving spouse subjected to liability to pay for funeral expenses incurred in the burial of the deceased spouse? The court said no obligation by the wife to furnish necessities for her husband existed at common law; that it had been held that a married woman is not liable for medical services rendered to her husband unless she has bound her separate estate by express agreement for the payment of such services.

The court sets out clearly all of the elements which have emancipated womankind completely, by enumerating her added rights and held: " There is merit in the argument that the law should recognize a legal duty upon the ' modern woman ' to contribute to the necessaries of the family, *such as medical expenses* if her husband is unable to, and to bury him if his estate is incapable of doing so." (See *Bodner* v. *Feit*, [April, 1936] 247 App. Div. 119, 121.)

In view of the changed status of married women and the new Decedent Estate Law, in effect September 1, 1930, I agree that there is merit in the argument that a woman decedent whose separate estate is *capable* of paying should stand charge for the medical services which she had accepted. The intention to charge her estate may be implied from all the circumstances. The change in status should lead the courts to recognize the inapplicability of some rules of law which were based on the legal disabilities of married women. (35 Columbia Law Review [1935], p. 783.)

It has been held under the common law that, from the obligation of a husband to supply necessaries to a wife, the law implies a promise to pay, and from this duty springs a legal obligation.

The claim against the husband is on the theory of *assumpsit* and is an equitable action. In view of the *separate* estate of the wife, I believe the law should not tolerate such a gross injustice as to charge the husband for medical services. Equity is sought and equitable principles must finally decide.

There is no basis for the application of the old rule upon the facts in the instant case. Manifest good sense forbids it. By reason of changed conditions of married women, their changed property

rights, in the instant case a separate estate of the decedent, her will and its provisions for payment of debts and funeral expenses, I am not bound to follow the rule of the common law. Upon the facts herein, I hold that the rule is abrogated where the decedent has a substantial separate estate. A new public policy has emerged. The common law has been changed in a hundred other cases to meet modern rights by legitimate fiat and court decision.

The decision herein upon the reasons above set forth rests upon the facts of the instant case.

There is another ground for charging the estate of the decedent with the last sickness expenses.

An agreed statement of facts was entered into. It shows that Henry R. Burt and the decedent were married September 4, 1908. At the time of the marriage Mrs. Burt had two children of her former marriage and died without leaving issue of her marriage to Mr. Burt. Dr. McGarvey of Bronxville attended Mrs. Burt in her last illness. He had been the attending family physician. He was called in by Mr. Burt and, subsequently, other noted physicians were called in at times when her condition became more grave. Dr. McGarvey made the arrangements for the services of the other physicians. None of them had conversation with either Mr. or Mrs. Burt.

It appears that Mrs. Burt was possessed of a large private fortune. The husband had much less property. He was unable upon his income to maintain the family in the manner which Mrs. Burt desired, so they had agreed to make a division of the expenses of the household, which is set out in the statement of facts. Among the items to be paid by Mrs. Burt were: " Also taxes on house and lot which were owned by Mrs. Burt, food for household, *miscellaneous doctors' and dentists' bills for herself and children.*"

During the last illness of Mrs. Burt, the husband urged upon her to see her attending physician and, with her acquiescence, he telephoned to Dr. McGarvey who later called upon Mrs. Burt and continued to attend her thereafter. Theretofore, all bills of Dr. McGarvey were paid by Mrs. Burt personally.

There is annexed to the statement of facts Schedule B, indicating payments to doctors, dentists, etc., made by Mrs. Burt, running from May 7, 1914, up to August 13, 1932.

In the instant case the decedent, by such agreement, bound herself and her estate and thus waived and relieved the husband of any duty to support and maintain her. In using her own funds or income as set out in the statement of facts for the payment of doctors' bills, she had waived her right and the right of her estate to be reimbursed for the present medical bills. (*Matter of Levine,*

145 Misc. 433, and cases cited.) By this agreement and the acts thereunder is found the intention to bind her separate estate for bills for medical services rendered her and the children. It is only necessary that her intention to bind it shall appear.

The Surrogate's Court has jurisdiction " to administer justice in all matters relating to the affairs of decedents, * * * to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding." (Surr. Ct. Act, § 40; *Matter of Raymond* v. *Davis*, [1928] 248 N. Y. 67.) An accounting proceeding is an equitable action and I hold that, in the furtherance of justice, which is another word for equity, the debt for medical services in the last sickness of this decedent should be exacted from the estate of the decedent upon all the grounds heretofore stated.

The payments were properly made by the executor out of the decedent's estate. The objections are dismissed.

Submit decree in accordance herewith.