RICHMOND L. MOORE, Plaintiff, *v.* STEFANA MURPHY, Defendant.*

Municipal Court of New York, Borough of Manhattan, Fifth District, December 1, 1938.

*Robbins S. Rutherford* [*Joseph Steven Frank* of counsel], for the plaintiff.

*Edwin G. Jenkins,* for the defendant.

McNULTY, J.   The pleadings are oral and the complaint alleges the performance of the services at the defendant's request and her promise to pay.   The answer is a general denial.

At the trial of the action it was conceded that services were rendered and that the fair and reasonable value therefor was $500, the amount sued for.   The defendant relied solely on the failure of any promise to pay as a defense to the action.

Marvin Murphy, the decedent, became ill and on September 20, 1937, went to the Presbyterian Hospital, accompanied by his wife, the defendant herein.   In her presence arrangements were made to admit the deceased to that hospital and a private room at ten dollars per day was engaged for him.   He remained there some forty-four days before he finally died.   During all that time he was under the care and supervision of the plaintiff physician.   During the course of this time the bills for board and room and other hospital expenses were submitted by the hospital and were paid by Mrs. Murphy with checks drawn on a bank account of Mrs. Murphy. During that time and shortly after the death the plaintiff testified that he had conversations with the defendant wherein on one specific occasion during this forty-four day period he stated that she told him to see that the decedent received the best of everything and that his bills would be taken care of.   He testified that there was a

* Affd. without opinion, App. Term, First Dept., N. Y. L. J., May 12, 1939, p. 2191.

later talk some time after the death of Mr. Murphy wherein Mrs. Murphy told the plaintiff to send his bill and it would be paid. Thereafter the plaintiff sent bills addressed to the estate of Marvin Murphy and in addition testified that he had sent one bill to Mrs. Murphy directly, shortly after Mr. Murphy had died.

The deceased was a policeman and had been married to the defendant for over six years. During the course of that time he invariably deposited or gave the defendant to deposit all his checks, amounting to $224 per month after certain pension deductions, in a bank account maintained in the name of the defendant. She testified, in her examination before trial, that all the family bills were paid from this account and that from time to time the deceased would cash checks from this account for his personal expenditures. During the course of their entire family life the defendant was also employed, and testified, in the examination before trial, that she from time to time would deposit moneys which she had earned in this account. Where she was employed and how much she earned was in no wise disclosed.

Although the defendant denied, in the examination before trial, that there was any actual arrangement or agreement between her and her husband concerning the use of the bank account, and the payment of bills, the fair and reasonable inferences from her testimony directly contradicts these statements. The course of conduct establishes very clearly a definite, continuous understanding and practice whereby the deceased turned over his earnings for deposit in this account and all expenses for the upkeep of the household and otherwise were met by checks upon this account. In addition, a child of a former marriage was supported and her expenses were paid by checks drawn on this account. It was testified by the defendant in the same examination that this was the only account maintained either separately or jointly by the deceased and his wife. This testimony may be open to some doubt in view of the large deposits and expenditures made during this final illness and with respect to the funeral. Although these enlarged deposits are in no wise explained, their source is not material to the decision of this case.

The decedent was given an unusually lavish funeral for one in his station in life, costing about $1,150. No attempt was made to have any administrator appointed for his estate. At the time of the decedent's death there was somewhat over $700 in the bank account, and the defendant also testified, in her examination before trial, that she received his insurance, although she would not testify as to the amount thereof nor what had become of it, and the court

may take judicial notice of the fact that this policeman's widow, in view of the admitted deductions from his salary, was entitled to get a pension benefit from the city of New York. There was further evidence in the record that the decedent left a relatively new automobile which was registered in his name at the time of death and the defendant, through some means not known to the court, had the registration on this car transferred to her own name.

The defendant was subjected to a rather long examination before trial in which she categorically denied that she had ever made any promises to the plaintiff or had had any conversations with him in respect to the payment of his charges. It is to be noted, however, that she did not take the stand during the trial to repeat these denials.

It is contended by counsel for the defendant that no express promise to pay the doctor's bill was proved and that, therefore, the defendant cannot be held liable. Great reliance is placed by the defendant's attorney on the case of *Hazard* v. *Potts* (40 Misc. 365) and *Weil* v. *Schneider* (154 Misc. 797). Of course, it is obvious that the trier of the fact may infer from the surrounding circumstances that a promise was made even though the defendant expressly denies it.

While the court cannot discover any other case in which the surviving wife has been held responsible for the expenses of the husband's last illness, I am of the opinion that the circumstances of this case lead to the conclusion that the defendant intended to, and did, pledge her personal credit for the payment of the plaintiff's bill. It is only just and equitable that the plaintiff be paid, and the defendant was the only possible source from which he could receive payment, irrespective of whether the husband lived or not. Six years of regular responsibility for the payment of all the husband's as well as the family's bills from the funds jointly set aside, the payment by her of the hospital bills and her presence and undoubted participation in the arrangements leading up to the admission of the decedent to the hospital, her payment of the rather large funeral bills from these joint funds, lead me to discredit her denials made at the examination before trial. The normal inferences flowing from her conduct indicate that she was anxious for the deceased to have the best care, and did everything necessary to assure the plaintiff's best professional efforts in his behalf.

As the scope of woman's rights in the eyes of the law has greatly increased, the courts have tended quite naturally to increase her responsibility and obligations. (See *Matter of Burt*, 160 Misc. 218; modfd., 254 App. Div. 584; *Apostle* v. *Pappas*, 154 Misc. 497.)

While neither of these cases has gone as far as to charge a wife's estate with the expenses of the final illness, there is no reason why, when the circumstances warrant it, that such a result should not be achieved. There is no doubt that she could pledge her credit to assure payment of this doctor's bill, and it is my opinion that all the circumstances warrant the inference that she did so. (See *Rowe* v. *Havens*, 255 App. Div. 826.) It would be a gross miscarriage of justice were the decedent to be permitted to transfer his funds to the defendant completely and to have her get all the advantages of his estate in such a way that she could avoid payment of a reasonable and just indebtedness. Her actions in not administering this estate and in not conserving the funds in connection with the funeral expenses and hospital expenses would tend to indicate a lack of good faith and honesty with respect to this single remaining creditor of her husband. While her husband could obviously do as he would with his funds he should not be permitted to transfer them in such a way that the wife can stand behind a legal technicality and secure all the benefits without any responsibility. (See *Bodner* v. *Feit*, 247 App. Div. 119.)

For the reasons heretofore set forth judgment for the plaintiff in the sum of $500, with interest, is hereby awarded. Ten days' stay to the defendant.